### New Hampshire–Vermont Hospitalization Service v. Commissioner, Department of Banking and Insurance

[321 A.2d 39]

No. 246-73

Present: Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.

Opinion Filed June 4, 1974

*Paterson, Gibson, Noble & Brownell,* Montpelier, for Plaintiff.

. *Warren B. Rudman,* Attorney General for the State of New Hampshire, and *Edward A. Haffer, Esq.,* for the Insurance Commissioner of the State of New Hampshire, *Amicus Curiae.*

*Kimberly B. Cheney,* Attorney General, and *James E. Hirsch,* Assistant Attorney General, for Defendant.

**Barney, C.J.** On the 18th day of September, 1973, the plaintiff filed a petition with supporting documentation with the defendant asking for approval of a rate increase on an emergency and temporary basis, to be effective in just twelve days, on October 1, 1973. As additional evidence the Commissioner, on notice to and acquiescence by, the plaintiff, incorporated into the record a copy of financial statements already in the hands of the Commissioner. This was called the Laventhol report and projected the financial picture of the plaintiff through December 31, 1973. On September 26, 1973, the emergency rate request was denied. We affirm.

The basis of the Commissioner's action was plainly put. First, he said that even accepting the figures submitted by the plaintiff, no necessity for an emergency increase on such short notice was demonstrated. Secondly, he pointed out that there was, outstanding, authority for the plaintiff to implement a 12.2% increase. This order was issued on May 14, 1973, but suspended on account of the price freeze. This obstacle

was removed on July 26, 1973, and the plaintiff was thereafter free to implement the order. In denying the request for emergency rate relief, the Commissioner specifically authorized the implementation of the 12.2% increase in rates as of October 1, 1973. Thirdly, the Commissioner promised to continue to monitor the plaintiff's financial situation and to authorize, either on his own motion or at the plaintiff's request, an emergency increase when the circumstances of the plaintiff justified it. Lastly, he urged the plaintiff to start preparations and submit a rate filing for 1974, so that action could be taken before the May, 1973, order ran out.

The plaintiff attacks the denial of its requested increase as unreasonable and arbitrary, and deficient for failing to follow prescribed regulatory procedures. It claims that the failure to hold a hearing or to make separate findings and conclusions of law, or to state the basis for his jurisdiction makes the order of denial a nullity.

The shortcomings in procedure, if they be such under the circumstances, would appear to be the product of the nature of the plaintiff's request. At all times during the pendency of action by the Commissioner, the rate filings were identified by the plaintiff as "interim temporary and emergency rates", intended to be effective within thirteen days. The request for increases referred to the "emergency basis" on which it was made and spoke of the "immediate need of the rates as proposed."

Unlike the statutes relating to the Public Service Board, no pattern of provisions designed to deal with special or emergency situations has been enacted for the Commissioner of Banking and Insurance. Although the review of rates is, by statute, related to the annual licensing provision and presumably represents a condition of the grant to do business, some added area of authority must be available to the Commissioner as a part of his supervisory and regulatory function. One of the essential purposes of regulation is to see to the preservation of services deemed to be so imbued with public interest that they are allowed to function as businesses only under supervision and shielded from most of the competitive forces of the open market place. The regulatory function must be expected to yield such enterprises some pro-

tection from the unusual and unforeseen as well as the expected.

In connection with the hospitalization services, as we have noted, the measure of authority and discretion of the Commissioner to deal with emergencies is unstated. It cannot be denied that it was to such intrinsic authority, whatever its dimension, that the plaintiff was appealing in its request for immediate rate relief. As such it was outside the usual rate review associated with the granting of the annual license.

■ Whatever intrinsic authority the Commissioner may have to deal with emergency requests must fall within the area of his administrative discretion, in the first instance. In this respect his position is similar to that of a court presented with a petition for extraordinary relief. He must first pass upon whether the circumstances of the case as then before him justify the invoking of his discretionary power to grant some sort of emergency relief. At this point, the issues of whether or not to have a hearing, who are proper parties, nature of the notice and the like have not yet been reached. The question is whether the petition and supporting materials make a *prima facie* case, on its face, for immediate emergency action.

In this case the Commissioner, having before him the entire pleadings and supplemental materials without modification from any opposing source, found the case for emergency relief not made out. He plainly based it on the failure of the plaintiff to take advantage of an available outstanding rate increase order, on the financial state of the company as revealed by what he had before him, and upon the fact that a new annual rate adjustment was in the immediate offing, though not at that time filed. Based on what is before us, including his report, this Court cannot say that his decision was arbitrary or capricious. On the contrary, for this Court to overturn it on the record would represent a serious intrusion on the function of the Commissioner and into the rate setting process. This we will not do. *In re New England Tel. and Tel. Co.*, 131 Vt. 470, 472, 307 A.2d 783 (1973).

Thus the plaintiff's complaint concerning lack of a hearing is premature. Had the commission decided that immediate emergency relief appeared justified, a hearing would then have

to follow in order to protect the interests of those opposed or in doubt about such relief. Presumably, the plaintiff has had all the best of it in presenting its case in unchallenged form, and has no grounds for complaint that its presentation was made *ex parte.*

With respect to the complaint concerning the failure to formally label findings and separately state conclusions of law, the documentation furnished by the Commissioner substantively provided any necessary support to his order, if any was required. Findings are usually resolutions of fact deriving from contested evidence, or at least from litigation where more than one side participates. That was not this case. While a recitation separating the factual basis on which the Commissioner acted from his legal conclusions might have been more helpful and more consistent with the usual pattern of administrative determinations made under 3 V.S.A. § 809, their absence here is no fatal defect. This matter did not reach the status of a contested case.

Some reference has been made with respect to activities in New Hampshire. However desirable as a matter of billing or business practice to strive for uniformity, that fact cannot overcome the administrative responsibility of our Commissioner of Banking and Insurance to act independently. His authority derives from our Legislature and must be exercised accordingly. *In re N.H.–Vt. Hospitalization Service,* 132 Vt. 66, 69, 313 A.2d 6 (1973).

*Order affirmed.*